[Crim. No. 607. Third Appellate District.—March 23, 1922.]

## THE PEOPLE, Respondent, v. CHARLES DIAMOND, Appellant.

[1] CRIMINAL LAW—BURGLARY—MISCONDUCT OF DISTRICT ATTORNEY— COMMENT UPON REFUSAL OF DEFENDANT TO DENY TESTIMONY — INSTRUCTION TO JURY—LACK OF PREJUDICE.—A judgment of conviction of the crime of burglary will not be reversed for misconduct of the district attorney in his argument to the jury in commenting upon the failure of the defendant to deny certain testimony, where the court upon objection instructed the jury to disregard the statement and advised them that the refusal of the defendant to testify could not in any manner prejudice him or be used against him in the trial.

APPEAL from a judgment of the Superior Court of Butte County and from an order denying a new trial. H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. A. McGregor for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—The defendant was charged with burglary in the first degree and he appeals from the judgment and order denying his motion for a new trial. The evidence is amply sufficient to support the verdict. To show the strong and conclusive character of the showing made by the people we may quote the following testimony of L. C. Webb, who was employed to watch the residence of J. H. Heuberger, the prosecuting witness, on the evening in question while all the family were absent from home:

"I went there, and went inside of the house and sat in the kitchen until some time—an hour or so, I don't know how long—and I got to thinking they might probably try that outer building and I moved out in to the summer

---

1. Whether forcing screen door or window constitutes burglary, notes, 15 Ann. Cas, 932; 17 L. R. A. (N. S.) 1100; 38 L. R. A. (N. S.) 770.

dining-room or back porch where I could see the back build-
ings and stayed there about until 11:30 or somewhere
around there. . . . I said about 11:30 or as near as I can
figure out, two men approached from the northeast corner
of the house and came around to the screen door and tried
the screen door and then turned around and walked back
around the east end of the porch and I thought they were
going on around and I stepped back a little to see the door
into the kitchen for fear they might try another door, and
I heard a sound as if someone was whispering and I thought
they were still at the corner of the screen porch because
the east end of the screen porch had a canvas over it and
I couldn't see if anyone was there and I presumed they
were there after I heard the sound and I waited and one of
them came about one-half way between the corner and the
screen door and came in on it and lit a match and looked in,
and after he looked in on the screen porch he walked back to
the corner and they were there for a little bit and they both
came around to this door coming on to this back room and
cut the screen and proceeded to walk in, and I halted them
and ordered them to throw up their hands and instead of
throwing up their hands, they whirled and ran out the
door . . . and I fired the shotgun over their heads and they
ran around the corner and one of them or both of them
shot back at me twice.''

He further testified that from the street lights and from
a match that was struck he recognized one of the men as
Diamond, the defendant, and that he was the one who un-
hooked the screen and entered the building first. This testi-
mony was not disputed nor discredited in any way and,
manifestly, the unlawful entry of the building by the de-
fendant having been thus shown, it was a rational and
almost necessary inference that he there and then had the
intent to commit larceny, thereby completing the offense of
burglary. We may add that the presence of the watchman
is accounted for by the circumstances that it was the
custom of Mr. Heuberger and his family to be away at-
tending a dance every Friday evening—that being the day
of the week in question—and that he had reason to believe
that his premises had been invaded by trespassers on pre-
vious occasions.

It is not claimed that the evidence does not warrant the verdict, but criticism is made of certain rulings of the court upon the admissibility of evidence and of a certain statement of the district attorney in his closing argument to the jury.

We deem it unnecessary to notice specifically these rulings, but it is sufficient to say that we have examined them with care, and, if it be conceded that doubt may exist as to the propriety of some of them, it is quite apparent that if any error was thereby committed it did not result in any prejudice to the substantial rights of the defendant.

[1] Said remark of the district attorney was as follows: "The testimony of Mr. Webb stands absolutely uncontradicted; the defense cannot prove that he was not at that house that night and did not do the thing that Webb said he did—break into the house by ripping out the screen door and unlocking it and went in armed with a loaded pistol and he fired back through the wire at Webb, with the undoubted intention of killing him. Now, the defendant cannot deny that; the fact stands uncontradicted before you; if the defendant wanted to deny it—I mean if it were not true—how easy it would be for him to deny it."

Thereupon the record shows the following proceeding:

"Mr. McGregor: We will object to the last remarks of the district attorney and assign them as prejudical error. (At this time at the request of the court the foregoing remarks by the district attorney are read by the reporter.)

"The Court: The refusal of the defendant to—not to take the stand and testify for himself, cannot in any manner prejudice him or be used against him in the trial. Therefore the statement last made by the district attorney will be stricken out and you will not consider that at all against this defendant."

Appellant cites several cases in which it was held that such conduct of the district attorney constituted prejudicial error, and of these, one, to wit, *People* v. *Mirandi,* 38 Cal. App. 178 [175 Pac. 653], was decided since the adoption of section 4½ of article VI of the constitution. But in the Mirandi case the error denounced by the appellate court consisted in the action of the trial court in overruling the defendant's exceptions to the unwarranted remark of the

district attorney, while herein the trial court properly and correctly instructed the jury as to their duty in the matter. Moreover, in that case, the evidence of guilt was circumstantial and not so convincing as to justify the appellate court in excusing the flagrant error.

This case is governed by the principle laid down in *People* v. *Kromphold,* 172 Cal. 512 [157 Pac. 599], wherein it was said: "While it was wrong for the district attorney to comment at all on the failure of defendant to testify upon this subject, it would be most unreasonable to assume in the light of the attitude of the trial judge in the matter and the nature of the remarks that the jury could have been influenced to the prejudice of the defendant by the statement complained of. (See *People* v. *Sansome,* 98 Cal. 235 [33 Pac. 202].) Certainly we cannot hold that this statement 'has resulted in a miscarriage of justice.' (Sec. 4½, art. VI, Const.)"

We are assured that herein it would be a gross "miscarriage of justice" to reverse the cause, and the judgment and order are therefore affirmed.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 22, 1922.